UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:

**MISTY MOON TRANSPORT 2 INC.**

Debtor

Chapter 11

Case No. 24-20218

**Order Confirming Plan**

The Plan under chapter 11 of the Bankruptcy Code filed by Misty Moon Transport 2 Inc. ("Debtor"), filed on January 24, 2025 [Dkt. No. 85], has been transmitted to creditors and equity security holders; and

it having been determined after hearing on notice that the requirements for confirmation set forth in 11 U.S.C. § 1191 (a) have been satisfied;

**IT IS ORDERED** that:

The Plan dated January 22, 2025, and filed by Debtor on January 24, 2025 [Dkt. No. 85] is amended as follows:

**Article 4: Treatment of Claims and Interests Under the Plan**; Section 4.01 is modified to include the following:

**Class 7** secured claims of Huntington are impaired.

The claim in the amount of $68,049.19 as set in POC #24 is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $42,000.00 and shall be paid at an interest rate of 9.5%. The Debtor shall make regular monthly payments directly to Huntington as follows:

$1,296.84 on or about February 15, 2025; $1,296.84 on or about March 15, 2025; and $1,345.38 on or about the 15th of the months following for 34 months. The unsecured portion of the claim shall be paid as further detailed in Class 11.

The claim in the amount of $68,049.19 as set forth in POC #25 is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $42,000.00 and shall be paid at an interest rate of 9.5%. The Debtor shall make regular monthly payments directly to Huntington as follows: $1,296.84 on or about February 15, 2025; $1,296.84 on or about March 15, 2025; and $1,345.38 on or about the 15th of the months following for 34 months. The unsecured portion of the claim shall be paid as further detailed in Class 11.

The claim in the amount of $74,081.27 as set forth in POC #26 is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $55,000.00 and shall be paid at an interest rate of 9.5%. The Debtor shall make regular monthly payments directly to Huntington as follows: $1,698.24 on or about February 15, 2025; $1,698.24 on or about March 15, 2025; and $1,761.81 on or about the 15th of the months following for 34 months. The unsecured portion of the claim shall be paid as further detailed in Class 11.

**Class 8** secured claims of Daimler are impaired.

The Debtor surrenders the collateral that is defined in Amended POC #31. Daimler's rights with respect to the equipment Daimler financed shall be governed by the Agreed Order Granting Daimler Truck Financial Services Relief from Stay. Daimler shall file a deficiency claim no later than 45 days after all collateral securing Daimer's claims is sold or otherwise disposed of to receive a distribution as a Class 11 claimant.

The Plan as herein amended is confirmed under 11 U.S.C. §1191(a).

A copy of the confirmed Plan and Exhibits are attached.

Dated: _____        _____
                                 Peter G. Cary
                                 United States Bankruptcy Judge
                                 District of Maine

| Fill in this information to identify the case: |
|---|
| Debtor: Misty Moon Transport 2, Inc. |
| United States Bankruptcy Court for the District of Maine |
| Case number:   24-20218 |

**Plan of Reorganization for Small Business Under Chapter 11**

Misty Moon Transport 2, Inc. Plan of Reorganization dated January 22, 2025.

**Background for Cases Filed Under Subchapter V**

### A. Description and History of the Debtor's Business

Misty Moon Transport 2, Inc. ("Debtor" or "Misty Moon") is a corporation formed under the laws of the State of Maine. The Debtor first began operating in 2015 with one truck and one delivery route. Over the last 10 years, it has grown its operations and currently has 24 trucks and 20 routes. Misty Moon's sole source of revenue is through its partnership with FedEx. The Debtor has continued to operate its business as a Debtor in Possession pursuant to 11 U.S.C. §§1182, 1184 throughout the Subchapter V Chapter 11 case.

### B. Liquidation Analysis

To confirm the Plan of Reorganization ("Plan"), the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit 1. According to the liquidation analysis, there would be no distribution in a chapter 7 liquidation.

### C. Ability to make future plan payments and operate without further reorganization.

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.

The Plan Proponent has provided projected financial information as further detailed in Exhibit 2.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $120,000.00 available for payment to general unsecured creditors. The total amount paid pursuant to the Plan is $173,108.00 which amount includes administrative fees and costs, priority claims and a dividend to general unsecured creditors. It will be distributed in the initial distribution and the three (3)

annual distributions ("Plan Cash").

The final Plan payment is expected to be paid on or before the date that is 36 months after the Effective Date of this Plan.

The Debtor's plan provides for annual distributions of Plan Cash to be funded primarily from the Debtor's business operations.  The Debtor will therefore have sufficient disposable income to fund this Plan and satisfy its creditors allowed administrative, secured claims and nonpriority unsecured claims.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these  projections.**

**Article 1:  Summary**

This Plan under chapter 11 of the Bankruptcy Code ("Code") proposes to pay creditors of the Debtor from Plan Cash.  During the pendency of the Plan, the Debtor shall make periodic payments into Debtor's Counsel's trust account totaling $173,108.00, which amount includes administrative fees and costs, priority claims and a dividend to general unsecured creditors. Except as otherwise provided in the Plan, such funds shall be distributed to creditors in a total of four (4) distributions ("Initial Distribution" and three "Annual Distributions"), as shown in Exhibit 3 attached hereto.  The Initial Distribution shall begin within seven (7) days of the Effective Date of this Plan.  The Debtor shall file and serve a Notice of Substantial Consummation not later than 14 days following the Initial Distribution.

This Plan provides for:
        1 class of priority claims;
        9 class of secured claims;
        1 classes of non-priority unsecured claims; and
        1 class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 4.08% of the claim amount.  This Plan also provides for payment of administrative claims.

All creditors and equity security holders should refer to Articles 2 through 10 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney. (If you do not have an attorney, you may wish to consult one.)**

**Article 2:  Classification of Claims and Interests**

2.01   **Class 1**:     The priority claims of the employees listed on Schedule E/F ("Employees") filed October 28, 2024 [Dkt. No. 1].

2.02   **Class 2**:     The secured claim of Bangor Savings Bank ("Bangor") listed on Schedule D filed October 28, 2024 [Dkt. No. 1].

2.03   **Class 3**:     The secured claims of Ally Bank ("Ally") as set forth in Proof of Claim ("POC") #8 and POC #9.

2.04   **Class 4**:     The secured claim of Financial Pacific Leasing, Inc. ("FPL") as set forth in POC #16.

2.05   **Class 5**:     The secured claims of Ford Motor Credit ("FMC") as set forth in POC #17, POC #18, POC #19, POC #21, and POC #22.

2.06   **Class 6**:     The secured claim of Verdant Capital ("Verdant") listed on Schedule D filed October 28, 2024 [Dkt. No. 1].

2.07   **Class 7**:     The secured claims of Huntington National Bank ("Huntington") as set forth in POC #24, POC #25, and POC #26.

2.08   **Class 8**:     The secured claims of Daimler Truck Financial Services ("Daimler") listed on Schedule D filed October 28, 2024 [Dkt. No. 1].

2.09   **Class 9**:     The secured claims of Allegiant Partners, Inc. transferred to Midland Funding ("AP/Midland") listed on lines 2.5 and 2.6 on Schedule D filed October 28, 2024 [Dkt. No. 1].

2.10   **Class 10**:    The secured claims of Allegiant Partners, Inc. ("Allegiant") listed on lines 2.1, 2.2, 2.3, 2.4, 2.7 and 2.8 on Schedule D filed October 28, 2024 [Dkt. No. 1].

2.11   **Class 11**:    All remaining non-priority unsecured claims as listed on Schedule E/F filed October 28, 2024 [Dkt. No. 1] or by an allowed claim.

2.12   **Class 12**:  The interest of Equity Security Holder Morgan Morang.


**Article 3:  Administrative Expense Claims**

3.01   Unclassified claims:   Under §1123(a)(1) of the Code, administrative expense claims and priority tax claims are not in classes.

3.02   Administrative expense claims:   Administrative expense claims including, without limitation, professional fees and expenses and the Subchapter V Trustee claim are unimpaired. All Administrative Claims shall be paid in full, unless payment terms are

subject to a separate Order of the Court: (a) on the later of the Effective Date or the date on which each such Claim becomes and Allowed Claim; or (b) in accordance with such terms as may be agreed upon by the Debtor and each holder of an Administrative Claim.

3.03   Priority tax claims:  Each holder of a priority tax claim pursuant to §507(a)(8) of the Code will be paid the total value of their respective Priority Unsecured Claim consistent with §1129(a)(9)(C) of the Code.

3.04   Holders of Administrative Claims accruing from the Petition Date through the Effective Date (other than professional fees and expenses and the Subchapter V Trustee claim), that have not been paid as of the Effective Date shall file a motion for allowance and payment, together with supporting documents, on or before the 14th day after the Effective Date.  The failure to timely file such motion shall constitute waiver and disallowance of any such Administrative Claim.

3.05   The deadline to file an application for allowance of professional fees and expenses and the Subchapter V Trustee Claim shall be on or before the 60th day after the Effective Date.

**Article 4:  Treatment of Claims and Interests Under the Plan**

4.01   Claims and interest shall be treated as follows under this Plan:

**Class 1** claims of the Employees are unimpaired.  The Employees were previously paid in full by this Court's Order Authorizing Debtor to Pay Prepetition Payroll [Dkt. No. 37].

**Class 2** secured claim of Bangor is impaired. As of the Petition Date, the principal balance of the claim is $20,000.00.  Beginning on November 15, 2024, and continuing on the 15th day of each subsequent month until the claim is paid in full, the Debtor shall pay the Lender the amount of $2,000.00 to be applied to the claim.  Thw payments shall be made directly from the Debtor to Bangor.  The principal balance of the claim shall be amortized over 12 months at the existing contract rate of 11.25%, with a final payment of all outstanding amounts owed on October 15, 2025.  The indebtedness evidenced by the original loan documents is amended hereby but shall remain the same indebtedness originally evidenced by the loan documents. As long as the Debtor is not in default of the loan, as restructured herein, Bangor shall not seek payment from the guarantor.  Debtor acknowledges and agrees that all of the terms and conditions of the loan documents evidencing and securing the loan shall remain in full force and effect and binding on the Debtor and the guarantor post-confirmation except as expressly modified under this Plan.

**Class 3** secured claims of Ally are impaired.

The claim as set forth in POC #8 is partially secured pursuant to § 506 of the Code. The

allowed secured portion of the claim is $66,548.00. The Debtor shall make regular monthly payments directly to Ally beginning the 15th of the month following the Effective Date of the Plan for 48 months at an interest rate of 7.00%. The monthly payment shall be $1,593.57. The unsecured portion of the claim shall be paid as further detailed in Class 11. As long as the Debtor is not in default on payments on the claim, as restructured herein, Ally shall not seek payment from the guarantor.

The claim as set forth in POC #9 is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $66,548.00. The Debtor shall make regular monthly payments directly to Ally beginning the 15th of the month following the Effective Date of the Plan for 48 months at an interest rate of 7.00%. The monthly payment shall be $1,593.57. The unsecured portion of the claim shall be paid as further detailed in Class 11. As long as the Debtor is not in default on payments on the claim, as restructured herein, Ally shall not seek payment from the guarantor.

**Class 4** secured claim of FPL is impaired. The claim in the amount of $173,570.63 is partially secured pursuant to §506 of the Code by the collateral. The allowed secured portion of the claim is $65,000.00. The Debtor shall make regular monthly payments directly to FPL beginning February 15, 2025 for 60 months at an interest rate of 7.00%. The monthly payment shall be $1,287.08. The unsecured portion of the claim shall be paid as further detailed in Class 11. As long as the Debtor is not in default on payments on the claim, as restructured herein, FPL shall not seek payment from the guarantor.

**Class 5** secured claims of FMC are impaired.

The claim in the amount of $2,633.26 as set forth in POC #17 is fully secured pursuant to § 506 of the Code. The Debtor shall make regular monthly payments directly to FMC beginning the 15th of the month following the Effective Date of the Plan for 3 months at the current contractual interest rate of 4.99%. The monthly payment shall be $885.06. As long as the Debtor is not in default on payments on the claim, as restructured herein, FMC shall not seek payment from the guarantor.

The claim in the amount of $24,090.53 as set forth in POC #18 is fully secured pursuant to § 506 of the Code. The Debtor shall make regular monthly payments directly to FMC beginning the 15th of the month following the Effective Date of the Plan for 24 months at the current contractual interest rate of 2.9%. The monthly payments shall be $1,034.37. As long as the Debtor is not in default on payments on the claim, as restructured herein, FMC shall not seek payment from the guarantor.

The claim in the amount of $2,637.96 as set forth in POC #19 is fully secured pursuant to § 506 of the Code. The Debtor shall make regular monthly payments directly to FMC beginning the 15th of the month following the Effective Date of the Plan for 3 months at the

current contractual interest rate of 4.99%.  The monthly payments shall be $886.64.  As long as the Debtor is not in default on payments on the claim, as restructured herein, FMC shall not seek payment from the guarantor.

The claim as set forth in POC #21 is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $38,111.72. The Debtor shall make regular monthly payments directly to FMC beginning the 15th of the month following the Effective Date of the Plan for 36 months at an interest rate of 7.00%.  The monthly payment shall be $1,176.78.  The unsecured portion of the claim shall be paid as further detailed in Class 11.  As long as the Debtor is not in default on payments on the claim, as restructured herein, FMC shall not seek payment from the guarantor.

The claim as set forth in POC #22 is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $36,303.89. The Debtor shall make regular monthly payments directly to FMC beginning the 15th of the month following the Effective Date of the Plan for 36 months at an interest rate of 7.00%.  The monthly payment shall be $1,120.96.  The unsecured portion of the claim shall be paid as further detailed in Class 11.  As long as the Debtor is not in default on the payments on the claim, as restructured herein, FMC shall not seek payment from the guarantor.

**Class 6** secured claim of Verdant is impaired.  The claim is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $110,000.00. The Debtor shall make regular monthly payments directly to Verdant beginning February 15, 2025 for 60 months at an interest rate of 7.00%.  The monthly payment shall be $2,178.13.  The unsecured portion of the claim shall be paid as further detailed in Class 11.  As long as the Debtor is not in default on payments on the claim, as restructured herein, Verdant shall not seek payment from the guarantor.

**Class 7** secured claims of Huntington are impaired.

The claim in the amount of $68,049.19 as set in POC #24 is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $42,000.00. The Debtor shall make regular monthly payments directly to Huntington beginning February 15, 2025 for 36 months at an interest rate of 7.00%.  The monthly payment shall be $1,296.84.  The unsecured portion of the claim shall be paid as further detailed in Class 11.  As long as the Debtor is not in default on payments on the claim, as restructured herein, Huntington shall not seek payment from the guarantor.

The claim in the amount of $68,049.19 as set forth in POC #25 is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $42,000.00. The Debtor shall make regular monthly payments directly to Huntington beginning February 15, 2025 for 36 months at an interest rate of 7.00%.  The monthly payment shall be $1,296.84.  The unsecured portion of the claim shall be paid as further detailed in Class 11.  As long as the Debtor is not in default on payments on the claim, as restructured herein, Huntington

shall not seek payment from the guarantor.

The claim in the amount of $74,081.27 as set forth in POC #26 is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $55,000.00. The Debtor shall make regular monthly payments directly to Huntington beginning February 15, 2025 for 36 months at an interest rate of 7.00%. The monthly payment shall be $1,698.24. The unsecured portion of the claim shall be paid as further detailed in Class 11. As long as the Debtor is not in default on payments on the claim, as restructured herein, Huntington shall not seek payment from the guarantor.

**Class 8** secured claims of Daimler are impaired.

The Debtor surrenders the collateral that is subject to claim ending 1416 as listed on line 2.12 in Schedule D. Daimler shall file a deficiency claim within 60 days of the Effective Date to received a distribution as a Class 11 claimaint.

The claim ending 1474 as listed on line 2.13 in Schedule D is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $28,500.00. The Debtor shall make regular monthly payments directly to Daimler beginning the 15th of the month following the Effective Date for 36 months at an interest rate of 7.00%. The monthly payment shall be $880.00. The unsecured portion of the claim shall be paid as further detailed in Class 11. As long as the Debtor is not in default on payments on the claim, as restructured herein, Daimler shall not seek payment from the guarantor.

The claim ending 1286 as listed on line 2.14 in Schedule D is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $27,250.00. The Debtor shall make regular monthly payments directly to Daimler beginning the 15th of the month following the Effective Date for 36 months at an interest rate of 7.00%. The monthly payment shall be $841.40. The unsecured portion of the claim shall be paid as further detailed in Class 11. As long as the Debtor is not in default on payments on the claim, as restructured herein, Daimler shall not seek payment from the guarantor.

The claim ending 6001 as listed on line 2.15 in Schedule D is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $35,000.00. The Debtor shall make regular monthly payments directly to Daimler beginning the 15th of the month following the Effective Date for 36 months at an interest rate of 7.00%. The monthly payment shall be $972.22. The unsecured portion of the claim shall be paid as further detailed in Class 11.. As long as the Debtor is not in default on payments on the claim, as restructured herein, Daimler shall not seek payment from the guarantor.

**Class 9** claims of AP/Midland are impaired.

The claim ending 9406 as listed on line 2.5 in Schedule D is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $40,000.00. The Debtor

shall make regular monthly payments directly to AP/Midland beginning the 15th of the month following the Effective Date for 36 months at an interest rate of 7.00%. The monthly payment shall be $1,235.08. The unsecured portion of the claim shall be paid as further detailed in Class 11. As long as the Debtor is not in default on payments on the claim, as restructured herein, AP/Midland shall not seek payment from the guarantor.

The claim ending 9390 as listed on line 2.6 in Schedule D is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $40,000.00. The Debtor shall make regular monthly payments directly to AP/Midland beginning the 15th of the month following the Effective Date for 36 months at an interest rate of 7.00%. The monthly payment shall be $1,235.08. The unsecured portion of the claim shall be paid as further detailed in Class 11. As long as the Debtor is not in default on payments on the claim, as restructured herein, AP/Midland shall not seek payment from the guarantor.

**Class 10** claims of Allegiant are impaired.

The claim ending 1657 as listed on line 2.1 in Schedule D is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $62,000.00. The Debtor shall make regular monthly payments directly to Allegiant beginning the 15th of the month following the Effective Date for 48 months at an interest rate of 6.00%. The monthly payment shall be $1,456.07. The unsecured portion of the claim shall be paid as further detailed in Class 11. As long as the Debtor is not in default on payments on the claim, as restructured herein, Allegiant shall not seek payment from the guarantor.

The claim ending 4198 as listed on line 2.2 in Schedule D is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $3,378.80. The Debtor shall make regular monthly payments directly to Allegiant beginning the 15th of the month following the Effective Date for 12 months at an interest rate of 7.00%. The monthly payment shall be $292.36. The unsecured portion of the claim shall be paid as further detailed in Class 11. As long as the Debtor is not in default on payments on the claim, as restructured herein, Allegiant shall not seek payment from the guarantor.

The claim ending 8314 as listed on line 2.3 in Schedule D is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $57,226.80. The Debtor shall make regular monthly payments directly to Allegiant beginning the 15th of the month following the Effective Date for 36 months at an interest rate of 7.00%. The monthly payment shall be $1,767.00. The unsecured portion of the claim shall be paid as further detailed in Class 11. As long as the Debtor is not in default on payments on the claim, as restructured herein, Allegiant shall not seek payment from the guarantor.

The claim ending 0028 as listed on line 2.4 in Schedule D is partially secured pursuant to § 506 of the Code. The allowed secured portion of the claim is $90,000.00. The Debtor shall make regular monthly payments directly to Allegiant beginning the 15th of the month following the Effective Date for 60 months at an interest rate of 6.00%. The monthly payment shall be $1,739.95. The unsecured portion of the claim shall be paid as further detailed in Class 11. As long as the Debtor is not in default on payments on the claim, as

restructured herein, Allegiant shall not seek payment from the guarantor.

The claim ending 0546 as listed on line 2.7 in Schedule D is partially secured pursuant to § 506 of the Code.  The allowed secured portion of the claim is $52,000.00.  The Debtor shall make regular monthly payments directly to Allegiant beginning the 15th of the month following the Effective Date for 48 months at an interest rate of 6.00%.  The monthly payment shall be $1,221.22.  The unsecured portion of the claim shall be paid as further detailed in Class 11.  As long as the Debtor is not in default on payments on the claim, as restructured herein, Allegiant shall not seek payment from the guarantor.

The claim ending 8629 as listed on line 2.8 in Schedule D is fully secured pursuant to § 506 of the Code.  The allowed secured portion of the claim is $6,911.93.  The Debtor shall make regular monthly payments directly to Allegiant beginning the 15th of the month following the Effective Date for 24 months at an interest rate of 7.00%.  The monthly payment shall be $309.46.  The unsecured portion of the claim shall be paid as further detailed in Class 11.  As long as the Debtor is not in default on payments on the claim, as restructured herein, Allegiant shall not seek payment from the guarantor.

**Class 11** claims of all remaining non-priority general unsecured creditors are impaired.  Holders of Allowed Unsecured Claims will receive pro rata distributions from Plan Cash after payment of Counsel Fees as estimated in Exhibit 3 of the Plan attached hereto.  While the Debtor is making ongoing payments on the claims as outlined in the Plan, Class 11 creditors shall not seek payment from any guarantor.

**Class 12** claim of the interests of Equity Security Holder Morgan Morang in property of the Debtor's estate is unimpaired.  The Equity Security Holder is not taking a distribution under this Plan on account of his equity.  Upon entry of the Confirmation Order, all property of the Debtor's estate shall vest in the Debtor, free and clear of all liens, claims and encumbrances, except to the extent provided in this Plan, pursuant to §1141(b) of the Code.

### Article 5:  Allowance and Disallowance of Claims

5.01   Disputed Claim:     A disputed claim is a claim that has not been allowed or disallowed and as to which either:

> (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

> (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02   Delay of distribution on a disputed claim:         No distribution will be made on

account of a disputed claim unless such claim is allowed.

5.03   Settlement of disputed claims:    The Debtor will have the power and authority to settle and compromise a disputed claim after the Effective Date without further order of the Bankruptcy Court, provided that any settlement of a matter with a value exceeding $25,000 shall be subject to approval by the Bankruptcy Court upon a Bankruptcy Rul 9019 motion.

5.04   Claim Bar Date:    Pursuant to the Court's Amended Notice of Chapter 11 Bankruptcy Case filing [Dkt. No. 31] the deadline for filing proof of claims for all creditors (except governmental units) is March 3, 2025.  Governmental units have until April 26, 2025 to file a proof of claim.

### Article 6:  Provisions for Executory Contracts and Unexpired Leases

6.01   Assumed executory contracts and unexpired leases:  The Debtor assumes the following executory contracts as of the Effective Date:

   (a) Executory Contract entered into by the Debtor and Federal Express Corporation [Section 2.1 of Schedule G in Dkt. No. 1]; and

   (b) Executory Contract entered into by the Debtor and Federal Express Corporation [Section 2.2 of Schedule G in Dkt. No. 1].

6.02   Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under Section 6.01 of this Plan, or that are subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.  A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

### Article 7:  Means for Implementation of the Plan

The Debtor shall have adequate means for implementation of this Plan pursuant to § 1123(a)(5) of the Code through the ongoing business operations of the Debtor and any other funds generated or received by the Debtor and not allocated or paid pursuant to this Plan that may become available.

Upon entry of the Confirmation Order, all property of the Debtor's estate shall vest in the Debtor, free and clear of all liens, claims and encumbrances, except to the extent provided in this Plan, pursuant to § 1141(b) of the Code.

## Article 8:  General Provisions

8.01   Definitions and rules of construction:  The definitions and rules of construction set for in §101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:  N/A

8.02   Effective Date:  The Effective Date of this Plan is the first business day after the entry of the confirmation order.

8.03   Severability:  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04   Binding effect:  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

8.05   Captions:  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06   Controlling effect:  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Maine govern this Plan and any agreements, documents, and instruments execution in connection with this Plan, except as otherwise provided in this Plan.

8.07   Corporate governance:  Pursuant to § 1123(a)(6) of the Code, the Debtor avers that it shall not issue additional nonvoting equity securities, and further, avers that it has no other "Equity Security Holders" beyond those listed above in this Plan, and that collectively said "Equity Security Holders" own 100% of the limited liability company; in accordance with the requirements of § 1123(a)(6) of the Code, voting power within the limited liability company is appropriately distributed among the class(es) of securities.

8.08   Retention of jurisdiction:  To the maximum extent permitted by applicable law, the Bankruptcy Court shall retain jurisdiction over the Case after the Confirmation Date for the following purposes:

> (a) to consider and approve any amendment, modification or correction of the Plan, subject to the restrictions set forth in Bankruptcy Code Section 1193 and any modification of the Confirmation Order;
> 
> (b) to hear and determine all Fee Claims and all objections filed by the Debtor with respect to Claims other than Fee Claims;
> 
> (c) to hear and determine all adversary proceedings, contested matters, or other actions commenced in the Bankruptcy Court by the Debtor against any party and pertaining to any matter, including, without limitation, proceedings for recovery of

assets or avoidance of obligations or liens under Sections 544, 545, 546, 547, 548, 549, 550, and 553 of the Bankruptcy Code, proceedings relating to the assumption or rejection of Executory Contracts and Unexpired Leases, and proceedings relating to the enforcement by any creditor of any remedy against the Debtor;

(d) to hear and determine any disputes arising under the Plan, its implementation and the execution of any necessary documents thereunder;

(e) to grant extensions of any deadlines set forth in the Confirmation Order as may be appropriate;

(f) to enforce all injunctions and stays granted under this Plan or the Bankruptcy Code, and to enforce the discharge provisions of the Bankruptcy Code and the Plan; and

(g) to make such Orders as are necessary and appropriate to carry out and implement the provisions of the Plan

8.09   Undeliverable Distributions.  If any distribution on an Allowed Claim under the Plan is returned and no new address is provided to the Debtor within 30 days, the payment or distribution and any further payment or distribution on the Claim shall be redistributed in the appropriate Class or Classes, and the Allowed Claim shall be deemed satisfied in full.

8.10   Vesting of the Assets.  On the Effective Date, the Assets shall vest in the Debtors in accordance with § 1141(b) of the Bankruptcy Code.

**Article 9:  Discharge**

9.01 Discharge of the Debtor corporation under Subchapter V

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

   (a) imposed by this Plan; or

   (b) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this  Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

   (a) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192;  or

(b) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**Article 10:  Other Provisions**

10.01  Preservation of All Causes of Action and Standing:  The Debtor shall be exclusively vested with, retain, and may enforce and prosecute any and all claims that the Debtor or the Estate may have against any person or entity.  The Debtor may assign any claim or cause of action in the Debtor's sole discretion.  All claims and causes of action are specifically preserved unless otherwise released under this Plan.

*Remaining Page Intentionally Blank*

Dated:  January 22, 2025           /s/ *Morgan Morang*
                                   Misty Moon Transport 2, Inc.
                                   BY:  Morgan Morang



Dated:  January 22, 2025           /s/ *Tanya Sambatakos*
                                   Tanya Sambatakos, Esq.
                                   Molleur Law Office
                                   190 Main St., 3rd Fl
                                   Saco, ME 04072
                                   (207) 283-3777
                                   tanya@molleurlaw.com

EXHIBIT 1: MISTY MOON TRANSPORT 2 Inc.

The identity and fair market value of Debtor's assets are as follows:

| Property | Valuation | Source of Valuation | Secured Claim Amount/Lien | Equity |
|---|---|---|---|---|
| Bangor Savings Bank- Maintance account | $ 2,250.60 | Schedule A/B | $ - | $ 2,250.60 |
| Bangor Savings Bank- Operating account | $ 4,803.31 | Schedule A/B | $ - | $ 4,803.31 |
| Bangor Savings Bank-Payroll Account | $ 655.64 | Schedule A/B | $ - | $ 655.64 |
| Bangor Savings Bank- Savings | $ 20,000.00 | Schedule A/B | $ 20,000.00 | $ - |
| T&T Leasing deposit | $ 5,000.00 | Schedule A/B | $ 5,000.00 | $ - |
| Comdata (fuel prepayment) | $ 3,490.27 | Schedule A/B | $ 3,490.27 | $ - |
| Four desks and chairs, three filing cabinets, one table, refrigerator | $ 1,500.00 | Schedule A/B | $ 1,500.00 | $ - |
| 3 Panasonic Scanners ($200 each x 3) | $ 600.00 | Schedule A/B | $ 600.00 | $ - |
| 21 Panasonic scanners ($200 x 21) | $ 4,200.00 | Schedule A/B | $ 4,200.00 | $ - |
| Misc Office Equipment - 1 computer, 1 printer/scanner/copier | $ 750.00 | Schedule A/B | $ 750.00 | $ - |
| 2023 Ford Transit 350 Cutaway-3446 | $ 55,000.00 | Schedule A/B | $ 55,000.00 | $ - |
| 2023 Freightliner Cascadia - 1328 | $ 65,000.00 | Schedule A/B | $ 65,000.00 | $ - |
| 2023 Freightliner Cascadia - 1320 | $ 65,000.00 | Schedule A/B | $ 65,000.00 | $ - |
| 2020 Ford Transit 250 - 1815 | $ 16,334.00 | Schedule A/B | $ 2,620.80 | $ 13,713.20 |
| 2020 Ford Transit 250 - 8326 | $ 13,751.00 | Schedule A/B | $ 2,625.47 | $ 11,125.53 |
| 2021 Ford Transit 250 - 7304 | $ 18,187.00 | Schedule A/B | $ 18,187.00 | $ - |
| 2022 Ford Transit 350 Cutaway-2499 | $ 40,000.00 | Schedule A/B | $ 40,000.00 | $ - |
| 2022 Ford Transit 350 Cutaway-2602 | $ 40,000.00 | Schedule A/B | $ 40,000.00 | $ - |
| 2023 Ford Transit 350 Cutaway-4116 | $ 66,548.00 | Schedule A/B | $ 66,548.00 | $ - |
| 2023 Ford Transit 350 Cutaway-4109 | $ 36,942.08 | Schedule A/B | $ 36,942.08 | $ - |
| 2023 Ford Transit 350 Cutaway-4111 | $ 38,781.69 | Schedule A/B | $ 38,781.69 | $ - |
| 2023 Ford Transit 350 Cutaway-4113 | $ 66,548.00 | Schedule A/B | $ 66,548.00 | $ - |
| 2023 Ford Transit 350 Cutaway-3448 | $ 35,000.00 | Schedule A/B | $ 35,000.00 | $ - |
| 2023 Ford Transit 350 Cutaway-3447 | $ 55,000.00 | Schedule A/B | $ - | $ 55,000.00 |
| 2022 Ford Transit 350 Cutaway-1836 | $ 42,000.00 | Schedule A/B | $ 42,000.00 | $ - |
| 2022 Ford Transit 350 Cutaway-1837 | $ 42,000.00 | Schedule A/B | $ 42,000.00 | $ - |
| 2023 Freightliner Cascadia - 0366 | $ 65,000.00 | Schedule A/B | $ 65,000.00 | $ - |
| 2016 Freightliner Cascadia-5137 | $ 23,000.00 | Schedule A/B | $ - | $ 23,000.00 |
| 2018 Freightliner Cascadia - 2563 | $ 34,250.00 | Schedule A/B | $ 34,250.00 | $ - |
| 2018 Freightliner Cascadia - 0224 | $ 28,500.00 | Schedule A/B | $ 28,500.00 | $ - |
| 2018 Freightliner Cascadia - 0276 | $ 27,250.00 | Schedule A/B | $ 27,250.00 | $ - |
| 2020 Freightliner Cascadia - 291 | $ 35,000.00 | Schedule A/B | $ 35,000.00 | $ - |
| 2020 Ford Transit 250 - 8885 | $ 14,705.00 | Schedule A/B | $ - | $ 14,705.00 |
| 2023 Ford Transit 350 Cutaway-4161 | $ 55,000.00 | Schedule A/B | $ 55,000.00 | $ - |
| 2023 Ford Transit 350 Cutaway-4163 | $ 55,000.00 | Schedule A/B | $ 55,000.00 | $ - |
| 2022 Ford F150 | $ 70,000.00 | Schedule A/B | $ 70,000.00 | $ - |
| Tire and balancing machine | $ 3,500.00 | Schedule A/B | $ - | $ 3,500.00 |
| Storage racks and misc parts | $ 2,000.00 | Schedule A/B | $ - | $ 2,000.00 |
| Interest in mistymoontransport2.com | $ - | Schedule A/B | | $ - |
| Applied for Employee Retention Credit three quarters in 2020 (quarters 2,3,4) | unknown | Schedule A/B | $ - | $ - |
| Applied for Employee Retention Credit three quarters in 2021 (quarters 1, 2 3) | unknown | Schedule A/B | $ - | $ - |
| Possible preference action against MNY Capital | unknown | Schedule A/B | $ - | $ - |
| potential malpractice claim | unknown | Schedule A/B | $ - | $ - |
| Possible preference action against QFS Capital | $ 55,575.00 | Schedule A/B | $ - | $ - |
| **SUBTOTAL** | $ 1,208,121.59 | | $ 1,021,793.31 | $ 110,548.28 |
| **LESS:** Approximate Chapter 7 Trustee Fees 11 U.S.C. § 326 | | | | $ 8,800.00 |
| **LESS:** Estimate total other administrative expenses | | | | $ 18,000.00 |
| **Amount Available for General Unsecured Creditors in Hypothetical Chapter 7 Case** | | | | **$83,748.28** |

|  | Projected 2025 | % | Projected 2026 | % | Projected 2027 | % |
|---|---:|---:|---:|---:|---:|---:|
| Transportation Revenue | 3,966,180 | 100.00% | 4,005,842 | 100.00% | 4,126,017 | 100.00% |
| **Total Revenue** | **3,966,180** | **100.00%** | **4,005,842** | **100.00%** | **4,126,017** | **100.00%** |
| Advertising | 9,600 | 0.24% | 9,600 | 0.24% | 9,600 | 0.23% |
| Bank Fees | 600 | 0.02% | 600 | 0.01% | 600 | 0.01% |
| Finance Charges | - | 0.00% | - | 0.00% | - | 0.00% |
| Dues & Subscriptions | 8,604 | 0.22% | 8,604 | 0.21% | 8,604 | 0.21% |
| Fuel | 555,265 | 14.00% | 571,923 | 14.28% | 589,081 | 14.28% |
| Dental Insurance | 5,424 | 0.14% | 5,587 | 0.14% | 5,754 | 0.14% |
| Workers Comp Insurance | 121,056 | 3.05% | 123,477 | 3.08% | 125,947 | 3.05% |
| Liability and EPLI Insurance | 80,912 | 2.04% | 82,530 | 2.06% | 84,181 | 2.04% |
| Medical - DOT cards | 1,426 | 0.04% | 1,426 | 0.04% | 1,426 | 0.03% |
| Office Expenses/Uniforms | 8,200 | 0.21% | 8,200 | 0.20% | 8,200 | 0.20% |
| Payroll Processing Fees | 5,200 | 0.13% | 5,200 | 0.13% | 5,200 | 0.13% |
| Gross Wages and ER Portion of Taxes | 2,487,120 | 62.71% | 2,561,734 | 63.95% | 2,638,586 | 63.95% |
| Rent or Lease -Storage Unit | 2,580 | 0.07% | 2,580 | 0.06% | 2,580 | 0.06% |
| Rent - Building TNT Leasing | 30,000 | 0.76% | 31,500 | 0.79% | 33,075 | 0.80% |
| Box Truck Rental | 4,992 | 0.13% | 4,992 | 0.12% | 4,992 | 0.12% |
| Repair & Maintenance/Capital Expenses | 194,620 | 4.91% | 105,623 | 2.64% | 132,004 | 3.20% |
| Software | 29,060 | 0.73% | 30,513 | 0.76% | 32,039 | 0.78% |
| Tolls | 10,400 | 0.26% | 10,712 | 0.27% | 11,033 | 0.27% |
| Telephone | 17,960 | 0.45% | 18,499 | 0.46% | 19,054 | 0.46% |
| T Mobile | 1,368 | 0.03% | 1,368 | 0.03% | 1,368 | 0.03% |
| Spectrum | 1,788 | 0.05% | 1,788 | 0.04% | 1,788 | 0.04% |
| Central Maine Power | 1,020 | 0.03% | 1,122 | 0.03% | 1,234 | 0.03% |
| Maine Water | 284 | 0.01% | 298 | 0.01% | 313 | 0.01% |
| Heavy Duty Tax | 4,000 | 0.10% | 4,000 | 0.10% | 4,000 | 0.10% |
| Vehicle Registration | 26,873 | 0.68% | 26,873 | 0.67% | 26,873 | 0.65% |
| Truck Lease-Morgan | 18,000 | 0.45% | 24,000 | 0.60% | 24,000 | 0.58% |
| Professional Fees | 34,500 | 0.87% | 10,000 | 0.25% | 15,000 | 0.36% |
| **Total Expenses** | **3,660,852** | **92.30%** | **3,652,749** | **91.19%** | **3,786,531** | **91.77%** |
| **Net Operating Income** | **305,328** | **7.70%** | **353,093** | **8.81%** | **339,486** | **8.23%** |
| Other Income (Expense) |  |  |  |  |  |  |
| Depreciation | - |  | - |  | - |  |
| Interest | (62,421) | -1.57% | (44,946) | -1.12% | (26,605) | -0.64% |
| Bad Debts | - | 0.00% | - | 0.00% | - | 0.00% |
| Insurance Refund | - | 0.00% | - | 0.00% | - | 0.00% |
| **Total Other Income (Expense)** | **(62,421)** | **-1.57%** | **(44,946)** | **-1.12%** | **(26,605)** | **-0.64%** |
| **Net Income Before Taxes** | **242,907** | **6.12%** | **308,147** | **7.69%** | **312,881** | **7.58%** |
| **EBITDA** | **305,328** | **7.70%** | **353,093** | **8.81%** | **339,486** | **8.23%** |
| **Debt Payments** |  |  |  |  |  |  |
| Allegiant Partners Loan 108629 | 2,785 | 0.07% | 3,714 | 0.09% | - | 0.00% |
| Allegiant Partners Loan 114198 | 2,631 | 0.07% | 585 | 0.01% | - | 0.00% |
| Allegiant Partners Loan 138314 | 15,903 | 0.40% | 21,204 | 0.53% | 21,204 | 0.51% |
| Allegiant Partners Loan 140546 | 10,991 | 0.28% | 14,655 | 0.37% | 14,655 | 0.36% |
| Allegiant Partners Loan 141657 | 13,105 | 0.33% | 17,473 | 0.44% | 17,473 | 0.42% |
| Allegiant Partners Loan 140028 | 15,660 | 0.39% | 20,879 | 0.52% | 20,879 | 0.51% |
| Loan Diamler-1416-SURRENDER | - | 0.00% | - | 0.00% | - | 0.00% |
| Loan Diamler-1474 | 7,920 | 0.20% | 10,560 | 0.26% | 10,560 | 0.26% |
| Loan Diamler-1286 | 7,573 | 0.19% | 10,097 | 0.25% | 10,097 | 0.24% |
| Loan Diamler-6001 | 9,726 | 0.25% | 12,968 | 0.32% | 12,968 | 0.31% |
| Ford-1212 | 2,660 | 0.07% | - | 0.00% | - | 0.00% |
| Ford-2272 | 10,089 | 0.25% | 13,452 | 0.34% | 13,452 | 0.33% |
| Ford-2289 | 10,591 | 0.27% | 14,121 | 0.35% | 14,121 | 0.34% |
| Ford-6127 | 2,655 | 0.07% | - | 0.00% | - | 0.00% |
| Ford-6817 | 9,309 | 0.23% | 12,412 | 0.31% | 3,103 | 0.08% |
| Loan Midland 139390 | 11,116 | 0.28% | 14,821 | 0.37% | 14,821 | 0.36% |
| Loan Midland 139406 | 11,116 | 0.28% | 14,821 | 0.37% | 14,821 | 0.36% |

**Misty Moon Transport 2, Inc.**
**Financial Projections**

|  | Projected 2025 | % | Projected 2026 | % | Projected 2027 | % |
|---|---:|---:|---:|---:|---:|---:|
| Loan Verdant | 19,603 | 0.49% | 26,138 | 0.65% | 26,138 | 0.63% |
| Loan Financial Pacific | 11,584 | 0.29% | 15,445 | 0.39% | 15,445 | 0.37% |
| Huntington Loan 1656 | 15,284 | 0.39% | 20,379 | 0.51% | 20,379 | 0.49% |
| Huntington Loan 8616 | 11,672 | 0.29% | 15,562 | 0.39% | 15,562 | 0.38% |
| Huntington Loan 8700 | 11,672 | 0.29% | 15,562 | 0.39% | 15,562 | 0.38% |
| Ally | 14,342 | 0.36% | 19,123 | 0.48% | 19,123 | 0.46% |
| Ally | 14,342 | 0.36% | 19,123 | 0.48% | 19,123 | 0.46% |
| Bangor Savings Loan | 23,000 | 0.58% | - | 0.00% | - | 0.00% |
| Bankruptcy Payments to General Unsecured Creditors | 40,000 | 1.01% | 40,000 | 1.00% | 40,000 | 0.97% |
| **Total Debt Payments** | **305,328** | **7.70%** | **353,093** | **8.81%** | **339,485** | **8.23%** |
|  |  |  |  |  |  |  |
| **Cash Flow After Debt Service** | **0** | **0.00%** | **(0)** | **0.00%** | **0** | **0.00%** |

Exhibit Two

**AMENDED EXHIBIT 3: MISTY MOON TRANSPORT 2 INC.**
**PLAN CALCULATION, SCHEDULE OF PROPOSED ALLOWED CLAIMS, AND DIVIDEND ANALYSIS**

**PART 1: PLAN**

|  | Estimated Administrative Claim of Molleur Law Office | Estimated Administrative Claim of SubV Trustee fee | IRS | Estimated General Unsecured Dividend | Total Plan Contribution / Distribution |
|---|---|---|---|---|---|
| **Claim Amount** | $ 45,000.00 | $ 5,000.00 | $ 3,108.00 | $ 120,000.00 | $ 173,108.00 |
| **Initial -** | $ 20,000.00 | $ 5,000.00 | $ 3,108.00 | $ - | $ 28,108.00 |
| **Running Balance** | $ 25,000.00 | $ - | $ - | $ 120,000.00 | |
| **1st Annual -** | $ 10,000.00 | $ - | $ - | $ 40,000.00 | $ 50,000.00 |
| **Running Balance** | $ 15,000.00 | $ - | $ - | $ 80,000.00 | |
| **2nd Annual -** | $ 10,000.00 | $ - | $ - | $ 40,000.00 | $ 50,000.00 |
| **Running Balance** | $ 5,000.00 | $ - | $ - | $ 40,000.00 | |
| **3rd Annual -** | $ 5,000.00 | $ - | $ - | $ 40,000.00 | $ 45,000.00 |
| **Ending Balance** | $ - | $ - | $ - | $ - | |

**PART 2: SCHEDULE OF PROPOSED ALLOWED CLAIMS AND DIVIDEND ANALYSIS**

| Claims | Claim No./Notes | Amount Claimed or Scheduled | Proposed Allowed Unsecured Amount | Estimated Total Plan Distributions |
|---|---|---|---|---|
| American Express | Schedule E/F | $ 24,000.00 | $ 24,000.00 | $ 1,478.92 |
| American Express | Claim No. 2 | $ 1,891.61 | $ 1,891.61 | $ 116.56 |
| American Express | Claim No. 3 | $ 945.72 | $ 945.72 | $ 58.28 |
| American Express | Claim No. 4 | $ 5,571.08 | $ 5,571.08 | $ 343.30 |
| American Express | Claim No. 5 | $ 4,090.00 | $ 4,090.00 | $ 252.03 |
| American Express | Claim No. 6 | $ 4,567.16 | $ 4,567.16 | $ 281.44 |
| American Express | Claim No. 7 | $ 8,062.50 | $ 8,062.50 | $ 496.82 |
| American Express | Claim No. 13 | $ 5,405.42 | $ 5,405.42 | $ 333.09 |
| American Express | Claim No. 14 | $ 19,504.73 | $ 19,504.73 | $ 1,201.91 |
| Allegiant/Midland -9406 | Claim No. 29 | $ 83,531.82 | $ 43,531.82 | $ 2,682.50 |
| Allegiant/Midland - 9390 | Claim No. 30 | $ 83,531.82 | $ 43,531.82 | $ 2,682.50 |
| Allegiant - 1657 | Schedule E/F | $ 87,866.34 | $ 25,866.34 | $ 1,593.92 |
| Allegiant - 4198 | Schedule E/F | $ 4,281.48 | $ 1,442.68 | $ 88.90 |
| Allegiant - 8314 | Schedule E/F | $ 199,326.12 | $ 142,099.32 | $ 8,756.37 |
| Allegiant - 0028 | Schedule E/F | $ 202,400.54 | $ 110,400.54 | $ 6,803.04 |
| Allegiant - 0546 | Schedule E/F | $ 89,136.43 | $ 37,136.43 | $ 2,288.40 |
| Allegiant - 8629 | Schedule E/F | $ 16,230.66 | $ 9,318.73 | $ 574.23 |
| Ally Bank c/o AIS Portfolio Services. LLC | Claim No. 8 | $ 70,698.16 | $ 4,150.16 | $ 255.74 |
| Ally Bank c/o AIS Portfolio Services. LLC | Claim No. 9 | $ 72,468.57 | $ 5,920.57 | $ 364.83 |
| Capital One, N.A. | Claim No. 11 | $ 8,530.91 | $ 8,530.91 | $ 525.69 |
| Carroll's LLC | Claim No. 12 | $ 10,732.11 | $ 10,732.11 | $ 661.33 |
| Central Maine Power | Schedule E/F | $ 351.00 | $ 351.00 | $ 21.63 |
| Chase Card Services | Schedule E/F | $ 61,418.00 | $ 61,418.00 | $ 3,784.67 |
| Daimler Truck Financial Services USA LLC | Claim No. 31 | $ 354,675.80 | $ 174,850.80 | $ 10,774.56 |
| Financial Pacific Leasing | Claim No. 16 | $ 173,570.63 | $ 108,570.63 | $ 6,690.28 |
| Fleet Pride | Schedule E/F | $ 3,833.44 | $ 3,833.44 | $ 236.22 |
| Ford Motor Credit, LLC | Claim No. 22 | $ 76,489.25 | $ 40,185.36 | $ 2,476.28 |
| Ford Motor Credit, LLC | Claim No. 21 | $ 76,488.80 | $ 38,377.08 | $ 2,364.85 |
| Forward Financing | Claim No. 15 | $ 27,411.93 | $ 27,411.93 | $ 1,689.16 |
| Freightliner of Maine | Claim No.1 | $ 18,628.40 | $ 18,628.40 | $ 1,147.91 |
| Huntington National Bank | Claim No. 24 | $ 68,049.19 | $ 26,049.19 | $ 1,605.19 |
| Huntington National Bank | Claim No. 25 | $ 68,049.19 | $ 26,049.19 | $ 1,605.19 |
| Huntington National Bank | Claim No. 26 | $ 74,081.27 | $ 19,081.27 | $ 1,175.82 |
| Internal Revenue Service | Claim No. 20 | $ 400.00 | $ 400.00 | $ 24.65 |
| Janet Butler | Schedule E/F | $ 55,000.00 | $ 55,000.00 | $ 3,389.18 |
| JPMorgan Chase Bank, NA | Claim No. 10 | $ 62,961.14 | $ 62,961.14 | $ 3,879.76 |
| Kacie Lapierre | Schedule E/F | $ 119,250.00 | $ 119,250.00 | $ 7,348.36 |
| LiteFund | Schedule E/F | $ 30,000.00 | $ 30,000.00 | $ 1,848.64 |
| MECC Norm Crepeau | Schedule E/F | $ 21,000.00 | $ - | $ - |
| Morgan Morang | Schedule E/F | $ 23,099.00 | $ 23,099.00 | $ 1,423.39 |
| National Tire Wholesale | Schedule E/F | $ 10,143.56 | $ 10,143.56 | $ 625.06 |
| New England Tire | Schedule E/F | $ 4,251.99 | $ 4,251.99 | $ 262.01 |
| QFS Capital | Claim No. 27 | $ 14,000.00 | $ 59,023.75 | $ 3,637.13 |
| Rapid Finance | Schedule E/F | $ 125,000.00 | $ 125,000.00 | $ 7,702.68 |
| Ryder Truck Rental, Inc | Claim No. 23 | $ 164,696.69 | $ 164,696.69 | $ 10,148.85 |
| Sullivan Tire Co Inc. | Schedule E/F | $ 2,261.98 | $ 2,261.98 | $ 139.39 |
| T&T Leasing | Schedule E/F | $ 2,536.00 | $ 2,536.00 | $ 156.27 |
| The FundBull Corporation | Schedule E/F | $ 155,000.00 | $ 155,000.00 | $ 9,551.33 |
| Verdant | Claim No. 28 | $ 182,242.87 | $ 72,242.87 | $ 4,451.71 |
| **TOTAL UNSECURED CLAIMS POOL** | | **$ 2,977,663.31** | **$ 1,947,372.92** | **$ 120,000.00** |
| Total Unsecured Distribution (from PART ONE above) | | | | $ 120,000.00 |
| **PROJECTED DIVIDEND** | | | | **6.16%** |